BARR *v.* FORSHEE.

1. DEEDS—MENTAL COMPETENCY—EVIDENCE.

In a daughter's suit to set aside deeds to her brother and sisters from their elderly father, executed after the death of their mother, in which distribution of grantor's property plaintiff received almost a negligible amount compared to the others, finding of trial court that grantor was not mentally incompetent *held*, fully supported by the record.

2. SAME—UNDUE INFLUENCE—EVIDENCE.

Undue influence upon elderly father by defendant brother and sisters to gain greatly disproportionate share of his property which he distributed shortly after death of their mother *held*, not shown under evidence presented which, among other facts, showed grantor went unaccompanied to office of scrivener where deeds were prepared and executed, he had had most unpleasant and hostile relations with plaintiff, he suffered from rheumatism and lived with daughter who received largest share, notwithstanding trial judge found that the efforts at secrecy were not to be expected of a man with a normally independent nature and a more equal distribution might have been more consonant with natural justice.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted October 20, 1936. (Docket No. 53, Calendar No. 39,115.) Decided December 8, 1936. Rehearing applied for.

Bill by Dora C. Barr against Ella Forshee, Ivor M. Lewis, Edith Fae Huntley and Arthur Huntley to set aside deeds to real property, for an injunction and other relief. Decree for plaintiff. Defendants Lewis and Huntley appeal. Bill dismissed.

*Herbert W. Smith,* for plaintiff.

*Roland O. Kern,* for defendant Lewis.

*Alfred H. Sauer,* for defendants Huntley.

Butzel, J.    Abram M. Lewis, an elderly resident
of Caro, Michigan, whose wife died on April 19,
1925, owned a home in Caro, Michigan, a 160-acre
farm nearby, also a number of lots in Caro, includ-
ing a cemetery lot.    On or about May 25, 1925, Lewis
decided to deed his property to his children, Dora
C. Barr, plaintiff, Ella Forshee, Ivor M. Lewis and
Edith Fae Huntley.    He executed to Mrs. Huntley a
deed of the south 80 acres of the farm, reserving a
life interest in himself.    He also gave her a few lots
in Caro, Michigan.    Plaintiff alleges that the portion
of the farm so deeded was worth $10,000 and the
other lots $1,000.    He deeded to his son, Ivor M.
Lewis, subject to the life estate to himself, the north
80 acres of the farm, alleged by plaintiff to be worth
$10,000.    He deeded to Ella Forshee, a daughter,
and Mildred Balch, her daughter, the house and lot
in Caro, which plaintiff states were worth $4,800.
He deeded to plaintiff lots in Caro which she states
are worth only $300.    Plaintiff seeks to have the
deeds set aside, claiming that her sisters and brother
conspired together and used undue influence on the
grantor and that he was mentally incompetent when
he gave the deeds.

The lower court found that the grantor was not
mentally incompetent.    His finding is fully sup-
ported by the record.    He, however, found for plain-
tiff on the ground of undue influence and set aside
the deeds.    The testimony does not show with any
definiteness the value of the farm.    The judge found
that the entire farm was worth $10,000 or more and
at one time an offer of $16,000 had been refused.
From a statement made by the trial judge, it would

appear that the shares given to Mrs. Huntley and Ivor M. Lewis were very nearly alike and that given to Mrs. Forshee and daughter was somewhat less. That given to Mrs. Barr was almost negligible compared with what the others received. Mrs. Forshee sold her property prior to the bringing of this suit and though joined as a defendant, she and her husband were very active in plaintiff's behalf. The deeds were made about five weeks after the death of Mrs. Lewis. During that time the grantor was living at the home of Mrs. Huntley with whom he continued to reside. At the time, the grantor was suffering from rheumatism, but was not otherwise incapacitated and was able to get about with the use of a cane. It would not be unnatural for the grantor upon the death of his wife to contemplate a distribution of his property. Mrs. Huntley, at whose home Mrs. Lewis died, was the youngest of the children. There would be nothing unnatural or unusual in the old gentleman's showing more affection for her. The fact that he had the disposition of his property in mind is evidenced by the testimony of Mr. and Mrs. Forshee that about April 25th the grantor was driven out to the Forshee home and that he slipped a note to Mrs. Forshee which read as follows:

"Caro, Michigan, April 25, 1925. Dear ELLA: I want you to all share alike in my property. Will make papers soon. Love, A. M. LEWIS."

Doubt is cast by the appellants on the genuineness of the note. Attention is called to the fact that it would be unnatural for a father to sign a note to his daughter in this manner. There was some question as to whether the body of the note was in the grantor's handwriting. The signature appeared to be genuine. Further testimony showed that Mrs.

Forshee was prevented from talking to her father unless Mrs. Huntley was present. The deeds to Mrs. Forshee and Mrs. Barr were not sent to them until 1929, although executed in 1925. Subsequently, the grantor deeded the life estate reserved in the southerly 80 acres of the farm and the cemetery lot to Mrs. Huntley.

It was further shown that after the death of the grantor's wife, in giving members of the family keepsakes, he gave Mrs. Balch a grindstone, but later asked for its return as he wanted Mrs. Huntley to have the grindstone as a keepsake; also that he gave Mrs. Balch a cot and then two or three weeks later he tried to retrieve it so as to give it to Mrs. Barr; also that, after he gave Mrs. Balch a harness, Mrs. Huntley claimed it had been given to her so that she kept the bridle and Mrs. Balch retained the remainder of the harness. It would serve no purpose to detail the other testimony. It was shown that Lewis had an active, strong mind, and, as the judge stated, aside from the rheumatism and consequent difficulty of locomotion, he was physically well. The judge, however, found that the efforts at secrecy would not be expected of a grantor who normally was of an independent nature. The secrecy might naturally be accounted for as an attempt to avoid bad feeling and quarrelling among members of the family. The testimony, however, shows that the deeds were not drafted or executed in the presence of Mrs. Huntley or at her home, but that the grantor went unaccompanied to the office of a scrivener where the deeds were first prepared and subsequently signed; that he had most unpleasant and hostile relations with plaintiff and at one time a quarrel resulted in serious accusations. He told one witness that in distributing the property he had not done the right thing by plaintiff, but that

his property was all gone. Another witness testified that grantor had told him about the dispositions he had made.

We have examined the testimony with much care and while a more equal distribution might have been more consonant with natural justice, there was not a sufficient showing made that influence was unduly exercised so as to prevent the grantor from freely exercising his wishes, as he had a right to do.

The decree of the trial court is reversed and one will be entered dismissing the bill, with costs to the appellants.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.